UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20923-CR-UNGARO/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

LANCE CANNON,
VICENT HOLTON,
NATHANIEL STUBBS,

Defendants.
_____/

## OMNIBUS REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon the following motions:

- Defendant Lance Cannon's ("Cannon") Motion to Sever [D.E. 33];
- Defendant Vincent Holton's ("Holton") Motion to Sever Defendants [D.E. 37];
- Canon's Motion to Sever Counts [D.E. 34];
- Holton's Motion to Sever Counts [D.E. 36];
- Defendant Nathaniel Stubbs' ("Stubbs") Joinder in Co-Defendants' Motions to Sever Counts [D.E. 49];
- Holton and Cannon's Motion to Dismiss the Indictment for Outrageous Government Conduct, joined in by Stubbs [D.E. 38, 49, 56];
- Cannon, Holton and Stubbs's (collectively, "Defendants") Joint Motion to Dismiss the Crime of Violence Prong of Count 3 of the Indictment for Failure to State an Offense [D.E. 46].

These matters were referred to the undersigned by the Honorable Ursula Ungaro, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 40, 43, 51, 55]. The undersigned held a hearing on these matters on March 31, 2016. The undersigned has reviewed three transcripts of conversations involving Cannon and Holton, and the corresponding audio

recordings. See Gov't Exs. 1-3; Court Exs. 1-3. Upon review of these matters, the undersigned respectfully makes the recommendations set forth below.

## PROCEDURAL AND FACTUAL BACKGROUND

On November 24, 2015, Defendants were charged by way of indictment with the following offenses:

Count 1: Conspiracy to commit Hobbs Act robbery, from June 22, 2015 through November 13, 2015, in violation of 18 U.S.C. § 1951(a).

Count 2: Conspiracy to possess with intent to distribute five or more kilograms of cocaine, from June 22, 2015 through November 13, 2015, in violation of 21 U.S.C. § 841(b)(1)(A)(ii).

Count 3: Using and carrying a firearm in relation to a crime of violence and a drug trafficking crime, on November 13, 2015, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

Count 4: Possession of a firearm and ammunition by a convicted felon on November 13, 2015, as to Cannon, in violation of 18 U.S.C. § 922(g)(1).

Count 5: Possession of a firearm and ammunition by a convicted felon on November 13, 2015, as to Holton, in violation of 18 U.S.C. § 922(g)(1).

Count 6: Possession of a firearm and ammunition by a convicted felon on November 13, 2015, as to Stubbs, in violation of 18 U.S.C. § 922(g)(1).

See Indictment [D.E. 14].

The events leading to these charges can be summarized as follows based on the affidavit in support of a criminal complaint filed on November 14, 2015 [D.E. 1] and the undersigned's review of Gov't Exs. 1-3 and Court Exs. 1-3. Beginning in June, 2015, a confidential informant ("CI") who was working with agents of the Drug Enforcement Administration ("DEA") engaged in recorded conversations with Cannon and Holton regarding the CI's potential purchase of a large quantity of cocaine from them. However, the DEA halted the negotiations when it became apparent that Cannon and Holton could not supply a cocaine sample, as requested by the CI.

2

Thereafter, the CI presented to Cannon a plan to rob a fictitious drug stash house. Further meetings ensued among the CI, an undercover law enforcement officer ("UC") who was working with the Bureau of Alcohol, Firearms and Tobacco ("ATF"), Cannon, and Holton. The UC told Cannon and Holton that he would be picking up approximately 10-20 kilograms of cocaine from the stash house, which would have two armed individuals inside. Several discussions were then held as to how to carry out the stash house robbery. On November 13, 2015, Cannon, Holton and Stubbs (who had not been previously involved) met with the CI to discuss the final preparations for the stash house robbery. Upon arriving at the location designated by the CI and the UC, Defendants were arrested and the firearms they had brought along in their vehicle were seized. After being Mirandized, Stubbs gave a statement to law enforcement.

Defendants seek the following relief in the above-listed motions:

(1) In their Motions to Sever (hereafter, "Motions to Sever Defendants") [D.E. 33, 37], Cannon and Holton ask that their trial be severed from Stubbs' trial, or in the alternative, that Stubbs' post-Miranda statement be redacted, pursuant to Bruton v. United States, 391 U.S. 123 (1968).

(2) In their Motions to Sever Counts [D.E. 34, 36, 49], Defendants ask that the trial of Counts 4, 5 and 6, charging each of them with possession of a firearm by a convicted felon, be severed from the trial of Counts 1, 2 and 3. In the alternative, Defendants seek leave to stipulate that each of them is a convicted felon.

(3) In their Motion to Dismiss the Indictment for Outrageous Government Conduct (hereafter, "Motion to Dismiss Indictment") [D.E. 38, 49, 56], Defendants make two arguments. First, that the government engaged in outrageous conduct because, in creating the fictitious stash house robbery scenario, the government implanted the criminal design of the entire operation in

the minds of Defendants (hereafter, "Motion to Dismiss Indictment Part 1"). Second, that the local ATF office and the Federal Bureau of Investigation ("FBI") engage in racial profiling by targeting individuals of color as defendants in "phony stash house rip off" cases and that Defendants require discovery from the government to pursue this aspect of their defense of outrageous government conduct (hereafter, "Motion to Dismiss Indictment Part 2"). See Joint Motion for Discovery [D.E. 35].[1]

(4) In their Joint Motion to Dismiss the Crime of Violence Prong of Count 3 of the Indictment for Failure to State an Offense (hereafter, "Motion to Dismiss Violence Prong of Count 3") [D.E. 46], Defendants argue that a Hobbs Act robbery does not satisfy the crime of violence prong for the charge of using and carrying a firearm in relation to a crime of violence under either the "force clause" or the "residual clause" of 18 U.S.C. § 924(c).

The undersigned discusses each of these contentions below.

## MOTIONS TO SEVER DEFENDANTS

Cannon and Holton ask that their trial be severed from Stubbs' trial, or in the alternative, that Stubbs' post-Miranda statement be redacted, pursuant to Bruton v. United States, 391 U.S. 123 (1968). Under the teachings of Bruton and its progeny, "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Richardson v. Marsh, 481 U.S. 200, 211 (1987). See also United States v. Tapia, 59 F.3d 1137, 1142 (11th Cir. 1995) (finding no error where co-defendant's statement "was carefully redacted to exclude incriminating references to [defendants]" and was "read as a first-person narrative of [co-defendant's] activities"). At the hearing, the parties agreed to confer on the government's proposed redaction of Stubbs' post-

---

[1] The Motion for Discovery has not been referred to the undersigned.

4

Miranda statement and submit the results of their conference to the undersigned. On April 5, 2016, the government filed a Notice Regarding Proposed Redactions (hereafter, "Notice") [D.E. 71]. In its Notice, the government submitted its proposed redaction of Stubbs' post-Miranda statement but indicated that it had not yet had the opportunity to confer with Defendants. Id. at 1. Therefore, the undersigned respectfully recommends that Cannon and Holton's request that their trial be severed from Stubbs' trial be denied and their alternative request that Stubbs' post-Miranda statement be redacted be granted, subject to the Court's approval of the government's proposed redaction.

## MOTIONS TO SEVER COUNTS

Defendants ask that the trial of Counts 4, 5 and 6, charging each of them with possession of a firearm by a convicted felon, be severed from the trial of Counts 1, 2 and 3. In the alternative, Defendants seek leave to stipulate that each of them is a convicted felon. By these alternative requests, Defendants seek to avoid undue prejudice. The government agrees to the stipulations but notes that it has filed a Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 404(b) (hereafter, "Rule 404(b) Notice"), to which Holton and Cannon have objected [D.E. 39, 48, 58]. In its Rule 404(b) Notice, the government seeks to introduce prior felony convictions of Defendants. See Rule 404(b) Notice [D.E. 39]. If the government's proposed introduction of prior felony convictions is allowed pursuant to Rule 404(b), Defendants' request to sever counts and alternative request to stipulate that each of them is a convicted felon would be rendered moot. Therefore, the undersigned respectfully recommends that the Motions to Sever Counts be held in abeyance pending the Court's *in limine* ruling regarding the government's Rule 404(b) Notice.

## **MOTION TO DISMISS INDICTMENT**

### *A.  Applicable Law*

"Outrageous government conduct is a recognized legal defense." United States v. Gomez, No. 06-20592, 2007 WL 988863 (S.D. Fla. Mar. 30, 2007), report and recommendation adopted, Case No. 06-20592 [D.E. 118]. "Whether outrageous governmental conduct exists turns upon the totality of the circumstances with no single factor controlling and the defense can only be invoked in the rarest and most outrageous circumstances." United States v. Haimowitz, 725 F.2d 1561, 1577 (11th Cir. 1984) (citing United States v. Tobias, 662 F.2d 381, 387 (5th Cir. Unit B Nov. 1981)). With regard to reverse sting operations, "[g]overnment involvement in criminal activities is constitutionally impermissible only where it violates fundamental fairness and shocks the universal cause of justice." United States v. Walther, 867 F.2d 1334, 1339 (11th Cir. 1989) (citing United States v. Russell, 411 U.S. 423, 431-32 (1973); Owen v. Wainwright, 806 F.2d 1519, 1521 (11th Cir. 1986)). In the Eleventh Circuit, "government-created reverse sting operations are recognized and useful methods of law enforcement investigation." United States v. Brown, 625 F. App'x 945, 947 (11th Cir. 2015) (citing United States v. Ciszkowski, 492 F.3d 1264, 1271 (11th Cir. 2007)). And the Eleventh Circuit has "rejected challenges to the reverse sting method of investigation on numerous occasions." Id. (citations omitted). Therefore, "challenges [to] the legality of reverse sting operations in general" are foreclosed by Eleventh Circuit precedent. Id.[2]

### *B.  Motion to Dismiss Indictment Part 1*

In this part of their Motion to Dismiss Indictment, Defendants argue that the

---

[2] Defendants propose application of a six factor test formulated by a district court in the Ninth Circuit. See Defendants' Reply [D.E. 62 at 2-3] (citing United States v. Roberts, No. CR 13-00751-R-2, 3, 5, 2014 U.S. Dist. LEXIS 162656 (C.D. Cal. May 30, 2014)). The undersigned need not engage in this exercise given the Eleventh Circuit's clear teachings regarding claims of outrageous government conduct.

6

government's conduct is outrageous because, in creating the fictitious stash house robbery scenario, the government implanted the criminal design of the entire operation in their minds. The undersigned has reviewed the transcripts and recordings of the conversations among Cannon, Holton and the CI and finds as follows:

1. On June 22, 2015, Owen Nunez ("Nunez"), an acquaintance of the CI, arranged a meeting at a restaurant to discuss a potential cocaine deal with a "Colombian" and Cannon.

2. Prior to the arrival of the Colombian and Cannon, Nunez told the CI that Cannon had been a bodyguard for some rapper Nunez used to know; that Cannon and the rapper used to move around with women and stuff because what they did was pimp women. Nunez also said that Cannon was the Colombian's security.

3. Cannon actively participated in the discussions as to where to conduct the drug deal, the amount of drugs and the price.

4. A second meeting took place on June 24, 2015 at a restaurant among Nunez, the CI, Cannon and Holton. Cannon introduced Holton as the one who would transport the drugs to whatever location the CI wanted them to go.

5. After some talk about trust, Cannon told the CI to come to him for anything he ever needed. When the CI asked Cannon if he was talking about transportation, Cannon said "Yes. . . Listen, transportation if anybody plays with you. . . let him know. If anybody f------ with your sh-- ."

6. Cannon, Holton, the CI and Nunez met again on July 16, 2015 at a restaurant. At that meeting, the CI asked Cannon and Holton to bring back a one kilogram sample for the cocaine that the CI was looking to purchase in the deal. Holton insisted that, if the CI was happy with the sample, he also inspect the entire quantity of drugs before he took possession of them to transport them so as not to be blamed for any problems. And Cannon suggested that they all ride in one car to do the deal.

7. When Cannon and Holton left, the CI told Nunez he thought Cannon and Holton were liars and bet that they would not come back with the sample.

As previously noted, the DEA halted the drug deal. Defendants do not dispute the

government's account of the subsequent events, which is as follows. From October through November, 2015, the CI and the UC met with Cannon and Holton several times. The UC posed as a disgruntled courier for a cocaine trafficking organization, set to pick up between ten and twenty kilograms of cocaine from a stash house. In the course of planning the stash house rip off, the UC told Cannon that there were armed guards at the stash house. After some discussions about how to handle the armed guards, the UC told Cannon and Holton to let him know if this was something they didn't want to do or couldn't handle, to which Holton replied that this was a simple job because the UC was providing inside information. On another occasion, The UC gave Cannon and Holton another out, offering to continue with his courier job if they didn't or couldn't do the stash house rip off, but the response was laughter. On November 13, 2015, the planned date for the rip off, Cannon and Holton, along with Stubbs, arrived at the designated meeting place, a restaurant in Miami, bringing guns. From there, Defendants followed the CI to a second location where a van with a trap for transporting the drugs was parked. After the CI showed Defendants where the drugs would go in the van, all three were taken into custody. The guns that were seized from Defendants were a semi-automatic rifle and a semi-automatic pistol, along with ammunition. Several items of clothing were also seized from them, including: gloves; two stocking caps that Holton was wearing on his head; and a hat, a bandanna and a long sleeve shirt, all black.

Based on the foregoing factual findings regarding the initial meetings among Cannon, Holton and the CI, and the government's undisputed facts regarding the subsequent events, the undersigned finds that:

> ➢ Both Cannon and Holton exhibited a predisposition to engage in illegal drug transactions without any prompting by government agents, as is evident from their

initial discussions with the CI;

- Cannon showed a predisposition for violence in relation to drug deals when he told the CI to come to him "[i]f anybody f------ with his sh--";

- None of the Defendants were initially solicited by government agents: Cannon was introduced to the CI by another drug dealer; Holton was introduced to the CI by Cannon; and Stubbs was brought to the planned stash house rip off by Cannon and Holton;

- The UC offered Cannon and Holton two clear opportunities to withdraw from the planned stash house rip off, which they rejected;

- Defendants fully prepared to participate in the planned stash house rip off by bringing arms and equipment to the prearranged meeting location.

Viewing the totality of these circumstances, the undersigned concludes that the high threshold for finding outrageous government conduct is not met in this case. Haimowitz, 725 F.2d at 1577. Therefore, the undersigned respectfully recommends that the Motion to Dismiss Indictment Part 1 be denied.

### B.   *Motion to Dismiss Indictment Part 2*

In this part of their Motion to Dismiss Indictment, Defendants argue that the local ATF office and the FBI engage in racial profiling by targeting individuals of color as defendants in "phony stash house rip off" cases and that Defendants require discovery from the government to pursue this defense. As noted in Brown, general challenges to the legality of reverse sting operations, such as that presented by Defendants, are foreclosed by binding Eleventh Circuit precedent. Brown, 625 F. App'x at 947. However, due to the pendency of Defendants' Motion for Discovery, in which Defendants ask the Court for evidence to support this aspect of their

9

defense of outrageous government conduct, the undersigned respectfully recommends that the Motion to Dismiss Indictment Part 2 be held in abeyance pending the Court's ruling on the Motion for Discovery.

## MOTION TO DISMISS VIOLENCE PRONG OF COUNT 3

Defendants' argument that a Hobbs Act robbery does not satisfy the crime of violence prong of Count 3 under the "force clause" of 18 U.S.C. § 924(c) has been rejected by several district courts, including one in the Eleventh Circuit. See United States v. Brownlow, No. 1:15-cr-0034-SLB-SGC, 2015 WL 6452620 (N.D. Ala. Oct. 26, 2015). In Brownlow, the Honorable Sharon Lovelace Blackburn conducted a thorough and cogent analysis of the issue and concluded that "[t]he law is firmly established that a Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)." Id. at *4. Other district courts have reached the same conclusion. See e.g., United States v. Hunter, No. 2:12cr124, 2015 WL 6443084 (E.D. Va. Oct. 22, 2015); United States v. Standberry, No. 3:15CR102-HEH, 2015 WL 5920008 (E.D. Va. Oct. 9, 2015); United States v. Mackie, No. 3:14-cr-00183-MOC, 2015 WL 5732554 (W.D.N.C. Sept. 29, 2015). Defendants presented no contrary authority. Finding the weight of authority to be against Defendants' position, the undersigned concludes that the crime of violence prong of Count 3 is satisfied by a Hobbs Act robbery under the "force clause" of 18 U.S.C. § 924(c); hence, that prong is not subject to dismissal. Given this conclusion, the undersigned need not address Defendants' alternative argument that a Hobbs Act robbery does not satisfy the crime of violence prong of Count 3 under the "residual clause" of 18 U.S.C. § 924(c). See Brownlow, 2015 WL 6452620, at *5 (declining to address a similar argument).

Thus, the undersigned respectfully recommends that Defendants' Motion to Dismiss Violence Prong of Count 3 be denied.

## **RECOMMENDATION**

In accordance with the foregoing, the undersigned RESPECTFULLY RECOMMENDS that:

(1) The Motions to Sever Defendants [D.E. 33, 37] be DENIED as to Cannon and Holton's request that their trial be severed from Stubbs' trial, and GRANTED as to their alternative request that Stubbs' post-Miranda statement be redacted, subject to the Court's approval of the government's proposed redaction.

(2) The Motions to Sever Counts [D.E. 34, 36, 49] be held in abeyance pending the Court's *in limine* ruling on the government's Rule 404(b) Notice.

(3) The Motion to Dismiss Indictment Part 1 [D.E. 38, 49, 56] be DENIED; and the Motion to Dismiss Indictment Part 2 be held in abeyance pending the Court's ruling on Defendants' Motion for Discovery [D.E. 35].

(4) The Motion to Dismiss Violence Prong of Count 3 [D.E. 46] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have <u>fourteen</u> days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Ursula Ungaro. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Miami, Florida this 8th day of April, 2016.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Ursula Ungaro
Counsel of Record